## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **AAR AIRLIFT GROUP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No.  15-373 (RDM) |
| | ) | |
| **UNITED STATES TRANSPORTATION COMMAND,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This action to enjoin Defendant United States Transportation Command ("USTC") from publicly releasing information submitted to it by Plaintiff AAR Airlift Group, Inc. ("AAR")—known as a "reverse" Freedom of Information Act ("FOIA") case—is presently before the Court on the parties' cross-motions for summary judgment.  *See* Dkt. 18, 19.  AAR asserts that line-item pricing information included in its contract with USTC constitutes "commercial or financial information" that is protected from disclosure under FOIA Exemption 4.  Dkt. 1 ¶ 11.  USTC responds that AAR has failed to meet its burden to justify the nondisclosure of this information. Dkt. 19 at 5.  As explained below, the Court agrees with AAR that the rationale given by USTC in its March 3, 2015, Decision Letter is insufficient to sustain the agency's decision to disclose the line-item pricing information.  The Court, accordingly **GRANTS** Plaintiff's motion for summary judgment, Dkt. 18, and **DENIES** Defendant's cross-motion for summary judgment, Dkt. 19.  The matter is **REMANDED** to USTC for further consideration in light of this opinion.

## I. BACKGROUND

The following facts are not in dispute.  AAR is a civilian provider of airlift services to the Department of Defense and its constituent agencies, including USTC.  Dkt. 1 ¶¶ 2–5.  In September 2013, USTC issued a Request for Proposals ("RFP") to procure passenger and cargo airlift services for the United States Africa Command in Uganda, the Central African Republic, the Democratic Republic of the Congo, and South Sudan.  *Id.* ¶ 6.  The Performance Work Statement issued in connection with the RFP explains that the contractor will "provide all personnel, equipment, supplies, transportation, tools, materials, supervision, insurance, life support (e.g., housing, meals[,] etc., for contractor personnel) and other items and services necessary to operate two fixed-wing aircraft . . . [for] approximately 225 [flying] hours . . . for 24 days per month," as well as a "surge" schedule adding approximately 100 flying hours once every three months.  Dkt. 1-4 at 3, 5.

On November 27, 2013, USTC awarded the contract, designated Contract Number HTC711-14-D-R026 ("R026 contract"), to AAR.  Dkt. 1 ¶ 7.  As relevant here, the signed R026 contract specifies pricing for certain services and supplies required to fulfill the contract—known as Contract Line Item Numbers ("CLINs").  *See* Dkt. 12 at 3–19 (redacted version).  The CLINs include unit and/or maximum prices during specified periods of time for supplies and services itemized as "Post Award Conference," "Mobilization," "Monthly Fixed Operation Costs," "Regular Flying Hours," "Surge Flying Hours," "Fuel EPA Reimbursable," "Reimbursables," and "Demobilization."  *Id.*

Around November 26, 2014, USTC advised AAR by letter that it had received a request from Rose Santos of FOIA Group for records "that may result in the release of data in our possession that you released, specifically" the R026 contract.  Dkt. 1-4 at 20; Dkt. 1 ¶ 8.  The

letter explained that AAR was "invited to provide [USTC] justification to withhold the data in question from public release," and attached "guidelines that may assist [AAR] in justifying a request that [USTC] not release [AAR's] information."  Dkt. 1-4 at 20.  On December 4, 2014, AAR responded by providing USTC with a redacted copy of the R026 contract, which omitted the dollar amounts of the unit and maximum prices for the CLINs identified above, as well as the total award amount.  Dkt. 1-4 at 22; Dkt. 12.  In addition to noting that it was providing USTC with a redacted copy of the contract "in response to [USTC's] letter," AAR's letter also stated that

> [AAR] assumes the following with regards to the FOIA request:
>
> 1.  [AAR's] proposal and all updates remain AAR . . . confidential and proprietary information and is not to be released . . . .
>
> 2.  The FOIA request corresponds only to the basic contract, and not to any modifications, task orders, or task order modifications.

Dkt. 1-4 at 22.

On January 20, 2015, USTC e-mailed AAR, stating that it had received AAR's response but that "[t]he information you provided as justification to withhold your company's proposal does not show how if released [it] would cause competitive harm.  Please provide a more in-depth analysis . . . by 3 February 2015."  Dkt. 1-4 at 24.  On January 26, 2015, AAR replied, stating that (1) in its prior response "AAR identified that our proposal, including all updates, remain confidential and proprietary information"; (2) "AAR properly marked our proposal in accordance with FAR 3.104-4," which restricts the disclosure of contractor bid or proposal information and source selection information; and (3) "[d]isclosure of the proposal . . . would cause irreparable harm as it includes competition sensitive information regarding technical, pricing, and business operations that are unique and specific to AAR . . . ."  *Id.*

On March 3, 2015, USTC notified AAR by letter of its decision to release the R026 contract to the FOIA Group.  Dkt. 1-4 at 26 ("Decision Letter").  It explained that it had "reviewed [AAR's] response, the requested information, and the applicable law" and that "AAR did not address the contract itself which was the subject of the FOIA request, but rather addressed the proposal, which was not incorporated into the contract."  *Id.*  It also stated that it would refrain from disclosing the contract for five business days following AAR's receipt of the Decision Letter so that AAR could seek an injunction against public disclosure of the contract. *Id.*

On March 15, 2015, Plaintiff filed the instant action.  Dkt. 1.  Plaintiff sought a temporary restraining order ("TRO") and preliminary injunction against public release of the R026 contract, as well as permanent injunctive relief.  *Id.*; Dkt. 2.  The Court held a hearing on Plaintiff's motion for preliminary relief on March 16, 2015.  March 16, 2015, Minute Order.  At the hearing, both parties agreed to the entry of an injunction against disclosure of the contract until December 16, 2015, in order to permit adjudication of the case on the merits.  Dkt. 6; Dkt. 61-1 at 1–2.[1]  The Court, accordingly, denied as moot Plaintiff's Application for a TRO and Motion for Preliminary Injunction, Dkt. 2, and entered an order enjoining the public release of the R026 contract "and all other related documents and memoranda within the scope of FOIA request 14-34" until otherwise ordered by the Court or until December 16, 2015, Dkt. 7 at 2.  The

---

[1]  At the hearing, the parties also agreed to waive the requirements of Local Civil Rule 7(n) concerning the filing of an administrative record and appendix because "the documents that would comprise all or the vast majority of the administrative record are already attached as exhibits to Plaintiff's Complaint and Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction."  Dkt. 6-1 at 1; *see also* Dkt. 7 at 1.

parties subsequently agreed to public docketing of the *redacted* version of the R026 contract that was submitted to USTC with AAR's December 4, 2014, letter.  *See* Dkt. 12.

The Court now addresses the merits of the parties' cross-motions for summary judgment. *See* Dkt. 18, 19, 21, 24.

## II. DISCUSSION

Under FOIA Exemption 4, a government agency is not required publicly to release "trade secrets and commercial or financial information" that is "obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  Although FOIA does not itself require an agency to assert this right to withhold documents, the D.C. Circuit has "long held the Trade Secrets Act, 18 U.S.C. § 1905, a criminal statute that prohibits Government personnel from disclosing several types of confidential information unless 'authorized by law,' is 'at least co-extensive with . . . Exemption 4 of FOIA.'"  *Canadian Commercial Corp. v. Dep't of Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008) (quoting *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C. Cir. 1987)). As a result, "unless another statute or a regulation authorizes disclosure of the information, the Trade Secrets Act requires each agency to withhold any information it may withhold under Exemption 4 of the FOIA."  *Id.*  Thus, where an agency possesses information submitted to it by a private party and it decides publicly to disclose that information in response to a FOIA request, the private party may file a "reverse-FOIA action" to prevent the disclosure of information covered by Exemption 4.

In a reverse-FOIA case, the Court reviews the agency's decision to release information under the Administrative Procedure Act ("APA").  *Id.*  The agency's decision "must be set aside if and only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Id.* (quoting 5 U.S.C. § 706(2)(A)).  "Unlike a typical FOIA case, in which the court

would undertake its own analysis of the interests at stake, under this deferential standard of

review, the court does not substitute its judgment for that of the [agency], but the [agency] must

examine the relevant data and articulate a satisfactory explanation for its action including a

rational connection between the facts found and the choice made." *Jurewicz v. USDA*, 741 F.3d

1326, 1330–31 (D.C. Cir. 2014) (internal citations and quotation marks omitted); *see also CNA*

*Fin. Corp.*, 830 F.2d at 1153 ("Review of the informal agency action contested here does not

involve the 'substantial evidence' test, for no hearing on the record was required.").

As relevant here, Exemption 4 applies to information that is "(1) commercial or financial,

(2) obtained from a person [outside the government], and (3) privileged or confidential." *Pub.*

*Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983); *see also Gulf & W.*

*Indus., Inc. v. United States*, 615 F.2d 527, 529 (D.C. Cir. 1979).  The parties dispute only

whether USTC properly determined that the line-item pricing information contained in the R026

contract is not "confidential."[2]  Two distinct tests govern the inquiry whether information is

"confidential" for purposes of Exemption 4.

Where "financial or commercial information" is "provided to the Government on a

voluntary basis," it will be treated as "confidential . . . if it is of a kind that would customarily not

be released to the public by the person from whom it was obtained."  *Critical Mass Energy*

*Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc).

Alternatively, where "[c]ommercial or financial information [is] obtained from a person

---

[2]  Although the version of the R026 contract filed on the public docket also redacts the total
award amount, Dkt. 12 at 1, AAR has argued only that the line-item pricing information is
exempt from disclosure, *see, e.g.*, Dkt. 18, and in any event it is highly dubious that the total
contract award price could ever be covered by Exemption 4, *see McDonnell Douglas Corp. v.*
*U.S. Dep't of the Air Force*, 375 F.3d 1182, 1193 (D.C. Cir. 2004); *McDonnell Douglas Corp. v.*
*NASA*, 180 F.3d 303, 306 (D.C. Cir. 1999).

involuntarily," it is treated as "'confidential' for purposes of [Exemption 4] if disclosure [would either] . . . impair the Government's ability to obtain necessary information in the future; or . . . cause substantial harm to the competitive position of the person from whom the information was obtained." *Canadian Commercial*, 514 F.3d at 39 (internal quotation marks omitted) (third, fourth, and fifth alterations in the original) (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir.1974)). The parties do not dispute that the standard applicable to the "involuntary" provision of information—often known as the "*National Parks* test"—governs here. *See* Dkt. 18 at 10–11; Dkt. 19 at 7; Dkt. 21 at 7; *see also Critical Mass*, 975 F.3d at 878–79. The Court agrees. Although AAR's complaint includes a conclusory statement that "Contract R026 . . . was voluntarily submitted to USTC," Dkt. 1 ¶ 20, there is no indication that the line-item pricing information contained in the contract was optional. As Judge Bates has explained, line-item pricing information "is most often deemed a required element of government solicitations, and hence involuntarily submitted." *Canadian Commercial Corp. v. Dep't of Air Force*, 442 F. Supp. 2d 15, 29 (D.D.C. 2006), *aff'd*, 514 F.3d 37 (D.C. Cir. 2008). Here, there is no reason to doubt that this usual practice was followed and that the line-item pricing information was required.

Applying the *National Parks* test, AAR relies solely on the second prong—that its competitive position would be substantially harmed by disclosure of the line-item pricing information. Dkt. 21 at 8–12. In a reverse-FOIA action, the plaintiff bears the burden of justifying nondisclosure. *Canadian Commercial*, 442 F. Supp. 2d at 30. Moreover, although the D.C. Circuit has repeatedly addressed the confidentiality of line-item pricing, it has declined to adopt any per se test—in favor of either disclosure or protection. *Canadian Commercial*, 514 F.3d at 40; *McDonnell Douglas*, 375 F.3d at 1192–93. Indeed, although some judges on the

D.C. Circuit have expressed skepticism that line-item pricing information should be shielded from disclosure because "it seems quite unlikely that Congress intended to prevent the public from learning how much the government pays for goods and services," it is settled law in this circuit that the "substantial competitive harm" test applies.  *Canadian Commercial*, 514 F.3d at 43 (Tatel, J., concurring).  *Cf. McDonnell Douglas*, 375 F.3d at 1194 (Garland, J., concurring in part and dissenting in part); *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1167 (D.C. Cir. 1995) ("Although the idea that a price charged to the government for specific goods or services could be a 'trade secret' appears passing strange to us, we agree with the government that it is not open to us to attempt to decide that issue at this stage.").  To satisfy this test, AAR must "prove that: (1) [it] actually face[s] competition, and (2) substantial competitive injury would likely result from disclosure."  *Nat'l Parks*, 547 F.2d at 679.  "Conclusory and generalized allegations are . . . unacceptable as a means of sustaining the burden of nondisclosure."  *Id.* at 680.

AAR asserts that the Court should permanently enjoin disclosure of the line-item pricing information contained in the R026 contract because the "substantial competitive harm" test is "unambiguously met" and because USTC's rationale for its decision to release the R026 contract, as stated in its March 3, 2015, Decision Letter, does not withstand judicial scrutiny. Dkt. 18 at 11.  USTC responds that AAR failed to meet its burden of demonstrating that substantial competitive harm is likely to result from disclosure of the line-item pricing information because it offered the agency only conclusory statements of competitive harm despite the agency's request in its January 20, 2015, e-mail that AAR "provide a more in-depth analysis" of competitive harm.  Dkt. 19 at 8–9; Dkt. 1-4 at 24.

It is a "simple but fundamental rule of administrative law" that "a reviewing court . . . must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."  *SEC v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 196 (1947).  "[A]n important corollary of [this] rule" is that  "[i]f the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable."  *Id.  See also SEC v. Chenery Corp.* (*Chenery I*), 318 U.S. 80, 94 (1943) ("[T]he courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review.").  Here, USTC's Decision Letter stated that "AAR did not address the contract itself . . . but rather addressed the proposal, which was not incorporated into the contract."  Dkt 1-4 at 26.

AAR asserts that this rationale is arbitrary and capricious because AAR addressed the contract when it provided a redacted version to USTC in response to USTC's December 2014 inquiry.  Dkt. 18 at 11.  Ordinarily, the Court would likely defer to an agency's (eminently sound) determination that merely providing a redacted copy of a contract is insufficient to meet the burden of demonstrating that disclosure of the redacted information would likely cause substantial competitive harm.  *Cf. Nat'l Parks*, 547 F.2d at 679.  It is far from clear, however, that USTC in fact made such a determination or otherwise relied on this rationale.  Rather, as explained below, the record of the parties' correspondence as well as USTC's argument before this Court suggest that this was not the basis of the agency's disclosure decision.

In support of its claim that it based its disclosure determination on AAR's failure to meet its burden of proving that the line-item pricing information in the contract should be withheld, USTC points to its January 20, 2015, e-mail seeking more information from AAR and faults

AAR for failing to address the confidentiality of the R026 contract in its response.  Dkt. 24 at 2–3.  USTC's e-mail, however, sought additional information about AAR's "justification to withhold [the] company's *proposal*," and not more information about its justification for withholding portions of the *contract*.  Dkt. 1-4 at 24 (emphasis added).  Nothing in the record indicates that the proposal and the contract contain the same information or are interchangeable, and indeed the Decision Letter affirmatively contrasts the "contract" and "the proposal, *which was not incorporated into the contract*."  Dkt. 1-4 at 26 (emphasis added).  With this distinction in mind, it is apparent that USTC's warning that the information AAR "provided as justification to withhold [the] *proposal*" and request for "more in-depth analysis" of how the release of *that* information "would cause competitive harm" was conspicuously silent with respect to the line-item pricing information that AAR redacted from the *contract*.  Dkt. 1-4 at 24 (emphasis added).  That is, USTC faults AAR for focusing its second response (the January 26 e-mail) on the proposal, rather than on the contract, Dkt. 19 at 6, but that is precisely what USTC's January 20, 2015, e-mail invited AAR to do.

In short, the record indicates that the parties have been talking past one another all along:  First, USTC informed AAR that a FOIA requester sought disclosure of the R026 contract.  Dkt. 1-4 at 20.  AAR responded with a redacted copy of the R026 contract and stated that it "assume[d]" that the "proposal and all updates" would remain confidential because "[t]he FOIA request corresponds only to the basic contract."  Dkt. 1-4 at 22.  Then, USTC apparently misinterpreted this response as an attempt to justify nondisclosure of the proposal and asked for further information.  Dkt. 1-4 at 24.  AAR's second response then explained why the proposal was confidential and reiterated that the FOIA request pertained to the contract.  Dkt. 1-4 at 24.

USTC's Decision Letter then changed course and apparently faulted AAR for failing to "address the contract itself." Dkt. 1-4 at 26.

To the extent that USTC's determination that AAR "addressed the proposal" rather than "the contract itself," Dkt. 1-4 at 26, is based on AAR's discussion of the proposal in its second response, the determination is arbitrary and capricious because AAR's second response was based on a fair—and, indeed, the only fair—reading of USTC's request for more information. Moreover, in light of the administrative record of the parties' correspondence, the Decision Letter and the agency's decision to disclose cannot reasonably be construed as merely relying on the ground that AAR's initial response failed to justify the company's redaction of the line-item pricing information in the contract, and not on USTC's apparently mistaken belief that AAR had ignored a subsequent request for that justification. It is true that courts will "uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court cannot, however, affirm USTC's disclosure determination based on a rationale that was not in fact considered or relied upon by the agency, *see Canadian Commercial*, 514 F.3d at 41*; *AT&T Info. Sys. v. Gen. Servs. Admin.*, 810 F.2d 1233, 1236 (D.C. Cir. 1987); *Chenery I*, 318 U.S. at 95, nor can it "be expected to chisel that which must be precise from what the agency has left vague and indecisive," *Chenery II*, 332 U.S. at 197.

The Court concludes that remand to the agency is appropriate. If the problem were simply that the agency "fail[ed] to explain [its] administrative action [so] as to frustrate effective judicial review," the Court could resolve the matter by "obtain[ing] from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973). *See also*

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).  In this case, however, the problem is that USTC's current explanation of its rationale is in tension with the contemporaneous record of its decision.  Any "new materials" requested by the Court at this stage would more likely constitute "new rationalizations" for the agency's decision that the Court may not consider on the present record, as opposed to being "merely explanatory of the original record."  *Envtl.. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981); *see also AT&T*, 810 F.2d at 1236 ("[T]his exception [to remand] may not be employed to offer post-hoc rationalizations . . . .").  USTC opposes remand on the ground that AAR "has already had two opportunities to make a showing that would justify nondisclosure of the contract" and AAR failed "to meaningfully respond on either occasion," Dkt. 24 at 6, but as the Court has explained, the second "opportunity" was directed at the proposal, and not to the contract.  USTC is thus incorrect that a remand would improperly afford AAR a "third . . . bite of the apple."  *Id*.  In these circumstances, "the preferable course is to remand so that we can have one considered and complete statement of the [agency's] position on [AAR's] claim."  *McDonnell Douglas*, 57 F.3d at 1167.

## III.  CONCLUSION

Accordingly, Plaintiff's motion for summary judgment (Dkt. 18) is **GRANTED**, and Defendant's cross-motion for summary judgment (Dkt. 19) is **DENIED**.

A separate order accompanies this Opinion.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  December 8, 2015